IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| FARM CREDIT SERVICES OF AMERICA, FLCA,<br><br>Plaintiff,<br><br>vs.<br><br>MATTHEW HAAS, and DUSTIN JAHRAUS,<br><br>Defendants. | **8:25CV580**<br><br>**MEMORANDUM AND ORDER** |

Before the Court is Farm Credit's Motion for a Preliminary Injunction. Filing No. 8.

## I.   BACKGROUND

This is a noncompete case. Plaintiff, Farm Credit Services of America, FLCA ("Farm Credit"), is a part of the federal Farm Credit System servicing farmers and ranchers. Defendant, Matthew Haas, was employed by Farm Credit as an insurance officer from approximately June 2022 to September 12, 2025.[1] Filing No. 19-1 at 1. Defendant, Dustin Jahraus, also was employed by Farm Credit as an insurance officer from approximately May 2013 to September 13, 2025.[2]  *Id*. After Haas and Jahraus's careers with Farm Credit ended, they continued to work in South Dakota as Insurance Officers for a different crop insurance company. This lawsuit arises out of these post-employment business activities.

---

[1] The Amended Complaint, Filing No. 12, states different employment dates from what was stated by Defendants Matt Haas and Dustin Jahraus. The Amended Complaint states that Matt Haas was employed by Farm Credit as an insurance officer from on or about May 6, 2022, through September 12, 2025. *Id*.
[2] The Amended Complaint states that Dustin Jahraus was employed by Farm Credit as an insurance officer since at least January 2015 through September 15, 2025. Filing No. 12.

1

### A. Farm Credit's Business Operations

Farm Credit is part of the federal Farm Credit System, soliciting private hail insurance, federally reinsured multiple peril crop insurance, revenue protection, yield protection, livestock insurance, named peril insurance, and any other current or future crop insurance plans issued under the authority of the Federal Crop Insurance Act, 7 U.S.C. § 1508 et seq. (collectively "crop insurance"), to farmers and ranchers throughout Iowa, Nebraska, South Dakota, and Wyoming, its chartered territory. Filing No. 12 at 2. This case primarily involves the South Dakota market.

The federal government regulates the crop insurance industry and sets the price for crops (what the insurance payout will be). Filing No. 16-1 at 2. Because the federal government sets the prices, crop insurance agencies compete on customer relationships and superior service. *Id.*

The fall crop insurance sales season ends on September 30, 2025, the federally mandated deadline for customers to purchase crop insurance. *Id.* After that, customers cannot change their crop insurance for fall crops until the next crop insurance season. *Id.* The next crop insurance seasons starts in spring 2026.

### B. Defendant's Employment with Farm Credit and Nonsolicitation Agreement

Haas was employed by Farm Credit as an insurance officer from approximately June 2022 to September 12, 2025. Filing No. 19-1 at 1. Jahraus also was employed by Farm Credit as an insurance officer from approximately May 2013 to September 13, 2025. Filing No. 19-2 at 1. As insurance officers, Defendants' duties included selling crop insurance to existing Farm Credit customers; servicing the Customers; and identifying,

soliciting, and servicing new crop insurance customers on behalf of Farm Credit. Filing No. 12 at 3.

Defendants were subject to an employment agreement that included assignment, nonsolicitation, and nondisclosure provisions (the "Contract"). Filing No. 12 at 5. The Contract prohibited Defendants from soliciting customers they did business with during the course of their employment for a period of two years. *Id.* Additionally, the Contract prohibited Defendants from disclosing confidential information obtained in the course of their employment. *Id.* at 5–6. The execution of the Contract was a condition of Defendant's employment. *Id.* at 6. The relevant provisions read in full:

> **NONSOLICITATION OF CUSTOMERS**. For a period of two (2) years following the termination (voluntary or involuntary, for any reason or no reason) of Employee's employment with FCSAmerica and/or Frontier, Employee shall not, seek or accept employment with, and will not call on or solicit the business of, or sell to, or service (directly or indirectly, on Employee's own behalf or in association with or on behalf of any other individual or entity), any of the customers of FCSAmerica and/or Frontier with whom Employee actually did business and had personal contact while employed by FCSAmerica or Frontier, except to the extent such activities are unrelated to and not competitive with the business, products or services that Employee offered or provided on behalf of FCSAmerica or Frontier and cannot adversely affect the relationship or volume of business that FCSAmerica and/or Frontier have with such customers.
>
> **NONDISCLOSURE OF CONFIDENTIAL INFORMATION**. During the term of Employee's employment with FCSAmerica and Frontier and following the termination (voluntary or involuntary, for any reason or no reason) of Employee's employment with FCSAmerica and/or Frontier, Employee shall not use for any purpose or divulge, disclose, or communicate to any person or entity, in any manner whatsoever, any Confidential Information acquired during or as a result of Employee's employment with FCSAmerica and/or Frontier. Employee agrees that the Confidential Information is proprietary to FCSAmerica or Frontier and is owned solely by FCSAmerica or Frontier, and that the disclosure thereof would cause irreparable harm and damage to the business of FCSAmerica and/or Frontier. Employee will not access, copy, download, transmit, or reproduce any Confidential Information (whether stored electronically or otherwise) for any purpose other than furthering the business interests of FCSAmerica and Frontier. Employee

> will never use or disclose Confidential Information (even following the termination of employment) for any purpose other than furthering the business interests of FCSAmerica or Frontier.  Upon termination (voluntary or involuntary, for any reason or no reason) of Employee's employment with FCSAmerica and/or Frontier, Employee shall immediately return to FCSAmerica and Frontier, respectively all data, materials and other documents containing or related to any Confidential Information belonging to each respectively.

Filing No. 12 at 5.

### C. Defendant's Post-Employment Business Activities

After leaving Farm Credit, Defendants continued to work in South Dakota in the crop insurance business.  Filing No. 19-1; Filing No. 19-2.  They are both residents of South Dakota.  Filing No. 19-1; Filing No. 19-2.

Haas formed and opened his own insurance agency called Dakota Crop Protection LLC.  Filing No. 19-1 at 3.  Haas is the sole owner/member.  *Id.*  Haas is working as an independent contractor for JC Campbell, Inc., representing several insurance companies.  *Id.*  Dakota Crop Protection LLC has its own agency code for each insurance company.  *Id.*  All reports, commissions and customer files, and information are within these individual agency codes, and Dustin Jahraus does not have access to them.  *Id.*

Jahraus also formed and opened his own insurance agency called Dakota Ag Protection LLC, which is also an independent contractor of JC Campbell, Inc.  Filing No. 19-1 at 3; Filing No. 19-2 at 3.  Jahraus is the sole owner/member.  Filing No. 19-2 at 3.

Jahraus and Haas's insurance subagencies are not affiliated, related, or connected with each other—each agency is a separate independent contractor of the same master agent (JC Campbell, Inc.).  Filing No. 19-1 at 3; Filing No. 19-2 at 3.  There is no referral fee, sharing of profits or expenses, sharing of office space or employees, or cooperation

4

of any kind with respect to servicing customers between the two agencies. Filing No. 19-1 at 3; Filing No. 19-2 at 3.

Farm Credit is concerned that Defendant's activities violate their nonsolicitation agreement. Specifically, it contends that immediately after Defendants' employment with Farm Credit ended, Defendants began calling on, soliciting, selling, and/or servicing customers of Farm Credit with whom they did business and had direct personal contact as insurance officers for Farm Credit for the purpose of selling those same customers crop insurance through a competitor of Farm Credit. Filing No. 12 at 7. Farm Credit alleges that Defendants have encouraged customers to cancel their crop insurance through Farm Credit and to make application to transfer their crop insurance business to Defendants and other competitors of Farm Credit. *Id.*

On September 25, 2025, Farm Credit received transfer notices indicating that a customer with whom Jahraus previously had personal contact and did business while working for Farm Credit transferred its crop insurance policies away from Farm Credit. Filing No. 16-1 at 3. The insurance company that provided the cancellation notices, NAU Country, informed Farm Credit that the policy was transferred to Matt Haas as the agent under Dakota Crop Protection, LLC. *Id.* Haas did not previously have personal contact and do business with this customer while working for Farm Credit. *Id.*

Defendant Haas denies that he has called on, solicited, sold to, or serviced any customer with whom he had personal contact and worked with while at Farm Credit. Filing No. 19-1 at 2. Haas alleges that after leaving Farm Credit, customers he had personal contact with and worked with while at Farm Credit affirmatively reached out to him and asked to work with him. *Id.* However, Haas informed the customers he could not work

5

with them for two years or solicit their business. *Id.* When customers pressed Haas for a referral because they still wanted to leave Farm Credit, Haas provided names of potential agents they could talk to, and that list usually included Jahraus. Filing No. 19-1 at 3. The only former Farm Credit customers Haas has accepted business from are those with whom he did not work and did not have personal contact with while employed by Farm Credit. *Id.*

Similarly, Jahraus denies that he has called on any person for the purpose of their business, solicited, sold to, or serviced any customer with whom he had personal contact and worked with while at Farm Credit. Filing No. 19-2 at 2. Jahraus also alleges that after leaving Farm Credit, customers he had personal contact with and worked with while at Farm Credit affirmatively reached out to him and asked to work with him. Filing No. 19-2 at 3. However, Jahraus informed the customers he could not work with them for two years or solicit their business for anyone else either. *Id.* When customers requested a referral because they still wanted to leave Farm Credit, Jahraus offered various names of potential agents they could talk to, and that list included Haas. *Id.* The only former Farm Credit customers Jahraus has accepted business from are those with whom he did not work and did not have personal contact with while employed by Farm Credit. *Id.*

**D. This Litigation**

Farm Credit filed this lawsuit alleging these business activities violated Haas and Jahraus's nonsolicitation agreements. Filing No. 12. Specifically, Farm Credit has filed suit against Haas and Jahraus for breach of contract. *See generally id.* Farm Credit moved for an immediate temporary restraining order and preliminary injunction requiring Defendants 1) to cease all use of its confidential information as that term is defined in the

employment contract, and 2) to cease soliciting customers of Farm Credit with whom they did business as insurance officers for Farm Credit for the purpose of selling those same customers crop insurance through a competitor of Farm Credit.  *Id.*  Farm Credit also sought to prevent those acting in concert with Defendants, including any competitor of Farm Credit and Defendants' new employer, JC Campbell, Inc., from breaching the contract.  *Id.* at 8.  The Court granted the temporary restraining order in part and then held a preliminary injunction hearing.  Filing No. 11; Filing No. 22.

The Court has jurisdiction over Farm Credit's federal claims under 28 U.S.C. § 1332(a)(1).  There is complete diversity between the parties.  Plaintiff is a citizen of the state of Nebraska.  Defendants are citizens of the state of South Dakota.  The amount in controversy exceeds $75,000.00.

## II.    LEGAL STANDARD

Fed. R. Civ. P. 65 governs the issuance of preliminary injunctive relief.  In deciding whether to issue a preliminary injunction, the Court considers: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest."  *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc).

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  Consequently, a court must be "mindful that a movant carries a 'heavier' burden when granting a preliminary injunction has the effect of awarding the movant substantially the relief it could obtain after a trial on

7

the merits." *H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 946 (8th Cir. 2023) (quoting *Calvin Klein Cosms. Corp. v. Lenox Lab'ys, Inc.*, 815 F.2d 500, 503 (8th Cir. 1987)).

### III.  DISCUSSION

#### A. Likelihood of Success on the Merits

The Court starts with the "most important" factor—Farm Credit's likelihood of success on the merits. *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 706 (8th Cir. 2011). In this posture, Farm Credit "must show that it has at least a 'fair chance of prevailing.'" *Miller v. Honkamp Krueger Fin. Servs., Inc.*, 9 F.4th 1011, 1014 (8th Cir. 2021) (quoting *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013).

Farm Credit asserts one count for breach of Defendants' employment contracts. Under Nebraska law, a claim for breach of contract requires showing: (1) a valid promise, (2) a breach of that promise, (3) damages, and (4) compliance with any conditions' precedent. *See Ryan v. Streck, Inc.*, 958 N.W.2d 703, 710 (Neb. 2021) (describing the elements of a contract claim). At issue in this case is whether the restrictive covenants (nonsolicitation and preventing disclosure of confidential information) are enforceable and whether Farm Credit has shown a likelihood of success of proving Defendants breached their contracts. The Court addresses each provision in turn.

*1. Nonsolicitation Provision*

Farm Credit is likely to show that the nonsolicitation covenants in Defendants' employment agreement are enforceable. Under Nebraska law,[3] restrictive covenants like

---

[3] Farm Credit argues Nebraska law should apply. Defendants argue South Dakota law should apply. Because the four factors do not weigh in favor of granting injunctive relief, the Court will not discuss the Choice of Law argument. Under either Nebraska law, or South Dakota law, the four factors would not weigh in favor of granting injunctive relief. Thus, the Court will apply Nebraska law, as it does not affect the outcome.

those at hand are enforceable if they are reasonable. For example, the Nebraska Supreme Court has upheld limitations on soliciting customers who the employee had personal relationships with during their time with the employer. *Pro. Bus. Servs., Co. v. Rosno*, 589 N.W.2d 826 (Neb. 1999). Likewise, the Nebraska Supreme Court upheld a two-year limitation on soliciting a former employee's clients. *Aon Consulting, Inc. v. Midlands Fin. Benefits, Inc.*, 748 N.W.2d 626, 638–39 (Neb. 2008). Same here. Defendant's nonsolicitation provision lasts for two years and is limited to Farm Credit's customers "with whom [Defendants] actually did business and had personal contact while employed by" Farm Credit. Filing No. 9 at 4. So, it has the same limitations on duration and scope as restrictive covenants upheld by the Nebraska Supreme Court as reasonable.

However, Farm Credit has not shown a likelihood of success of proving that Defendants breached the nonsolicitation provision. Farm Credit's evidence that Defendants have assisted each other in soliciting and servicing customers is entirely speculative. At best, the evidence shows that Defendants spoke with previous customers only when the customers reached out to them first and gave referrals only when customers requested a provider other than Farm Credit. Even then, the evidence shows Defendants provided the customers with numerous referrals rather than funneling customers only to one another as Farm Credit speculates. The nonsolicitation clause does not bar Defendants from speaking to customers to let them know they can no longer service them. Farm Credit's best evidence is an affidavit from its employee Anthony Jesina regarding statements from a customer, which amounts to speculation because there is no direct statement from the customer and the parties introduced conflicting

evidence about what the customer said. Filing No. 16-1 at 4. Beyond the speculation of Farm Credit employees, the record is silent on Defendants' participation in soliciting customers. Farm Credit has not produced any account from these customers that Defendants were personally involved in their switch from Farm Credit to a competitor. Thus, the current record does not contain enough information to conclude that Farm Credit has a fair chance of success on this claim.

Additionally, as discussed in the Temporary Restraining Oder (Filing No. 11), the nonsolicitation provision prevents only the employees, (i.e., the two Defendants in this case) from engaging in the prohibited conduct; it does not extend to future employers of the defendants or any other third parties. Thus, Farm Credit has not shown it is likely to succeed on its request that the Court enjoin Defendants' new employers from working with any prior clients of Farm Credit.

2. *Use of Confidential Information*

Defendants' employment contracts also contained a provision prohibiting them from using or divulging Farm Credit's "confidential information." Filing No. 12 at 5. The parties do not dispute whether the nondisclosure of confidential information provision is enforceable. Similar to the Court's Temporary Restraining Order, Filing No. 11, Farm Credit has failed to show a likelihood of success of demonstrating Defendants breached the confidentiality provisions. The amended verified complaint does not contain any allegations that Defendants have shared or otherwise divulged information from Farm Credit. And the sole cause of action for breach of contract alleges only that Defendants have solicited clients with no mention of confidential information. Likewise, the temporary

restraining order and accompanying documents do not provide any factual basis for finding Defendants have misused Farm Credit's confidential information.

Therefore, Farm Credit has not shown a likelihood of success on the merits of its claim that Defendants breached the nonsolicitation provision. Additionally, its request to enjoin their new employer, JC Campbell, Inc., from conducting business with its former clients is overly broad and not encompassed by the employment agreement and its request to enjoin Defendants' use of confidential information is not supported by the facts.

**B. Irreparable Harm**

Farm Credit has not shown irreparable harm stemming from Defendants potential solicitation of customers. "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). The Eighth Circuit has recognized that the "[l]oss of intangible assets such as reputation and goodwill can constitute irreparable injury." *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 741 (8th Cir. 2002) (citation omitted). However, "the mere possibility of irreparable harm will not suffice. To demonstrate irreparable harm, the movant must show hard that is certain and great and of such imminence that there is a clear and present need for equitable relief." *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1346 (8th Cir. 2024) (citations omitted).

Here, similar to the reasons Farm Credit has not shown a likelihood of success on the merits, Farm Credit has not provided evidence that could be considered "certain and great and of such imminence that there is a clear and present need for equitable relief." First, Farm Credit has not provided specific evidence of conduct that would be in breach

of the nonsolicitation provision and cause irreparable harm. The declarations from Anthony Jesina, a Farm Credit employee, amount to speculation and vaguely discuss a conversation with one customer who did not even leave Farm Credit, and a conversation with an insurance company that provided cancellation notices. Moreover, even as speculation, neither of these declarations show a breach of the nonsolicitation because the Defendants were not working with customers they had worked with while at Farm Credit.

And second, the movant has not shown that the irreparable harm is imminent. Unlike the Temporary Restraining Order, Filing No. 11, granted by this Court, which was imminent due to the fall crop insurance season closing on September 30, 2025, the preliminary injunction covers the next crop insurance season, which does not start until spring 2026. This is not imminent compared to the prior grant of a Temporary Restraining Order. Farm Credit has not provided facts to show why the preliminary injunction is necessary for imminent irreparable harm.

Lastly, Farm Credit has failed to demonstrate how money damages would be inadequate to compensate it for any harm it suffered. Farm Credit alleges the breach of contract is causing irreparable harm in the form of loss of customer goodwill. However, Farm Credit has failed to establish this in the record. Accordingly, the Court concludes Farm Credit has not adequately shown it is likely to suffer imminent harm constituting irreparable harm and a preliminary injunction is not warranted.

## C. Balance of the Harms

The third factor the Court considers is the balance of harms. The potential hardship to Defendants in granting injunctive relief would be to preclude them working

and limiting the business they can accept in their new employment. The potential harm to Farm Credit is lost business. However, because the record currently shows no violation of the nonsolicitation provision, the balance of harms overall weighs in favor of denying injunctive relief.

### D. The Public Interest

The fourth factor the Court must consider is the public interest. The public interest favor enforcement of voluntary contract obligations. See *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1348 (8th Cir. 2024) (collecting authority). However, again, because the record currently shows no violation, the public interest weighs in Defendants' favor.

### IV. CONCLUSION

For all these reasons, the Court concludes a preliminary injunction is not warranted to enjoin the named Defendants from calling on or soliciting the business of, or selling to, or servicing (directly or indirectly), any of the customers of Farm Credit with whom Defendants actually did business and had personal contact while employed by Farm Credit. A preliminary injunction is not warranted to restrict the use of any confidential information. A preliminary injunction is also not warranted as to Defendants' new employer as it is not bound by Defendants' employment contracts with Farm Credit.

A preliminary injunction is an extraordinary remedy, and the record does not support such extraordinary relief for Farm Credit's claims. While the Court is not granting the preliminary injunction, the case will move forward on Plaintiff's claim for damages for breach of contract as set forth in its complaint.

THEREFORE, IT IS ORDERED:

1. Farm Credit's Motion for a Preliminary Injunction (Filing No. 8) is denied.

13

2. Defendants shall answer or otherwise respond to the complaint within 21 days of the date of this Order.

Dated this 7th day of November, 2025.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge